IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN OLAGUES,<br><br>　　　　　Petitioner,<br><br>　vs.<br><br>EDMUND G. BROWN JR.,<br><br>　　　　　Respondent. | No. C 07-3918 JSW (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY** |

## INTRODUCTION

Petitioner filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. In an order to show cause dated May 14, 2010, this Court found that the petition alleged a cognizable claim that Petitioner's federal constitutional right to trial by a jury drawn from the vicinage of the crime was violated because the jury that convicted him was selected from a district in which no part of the crime occurred. Respondent filed an answer, memorandum and exhibits in support thereof. Petitioner filed a traverse. Petitioner also requests in the traverse that this Court impose sanctions under Rule 11(c) of the Federal Rules of Civil Procedure against Respondent's attorney, which is now DENIED. For the reasons stated below, the petition is denied on the merits.

## PROCEDURAL BACKGROUND

On November 5, 2005, Petitioner was convicted in the Marin County Superior Court for deprivation of custody of a child (Cal. Pen. Code § 278.5(a)). Petitioner was sentenced to three years probation, to be supervised in Louisiana.

Petitioner appealed, and the California Court of Appeal for the First District affirmed the judgment on May 30, 2007. Petitioner filed a petition for review in the California Supreme Court, which was denied on August 22, 2007. On June 12, 2007, Petitioner filed a petition for habeas corpus in the Eastern District of Louisiana. The petition was transferred to this Court on July 31, 2007.

## **FACTUAL BACKGROUND**

The facts underlying the charged offense, as found by the California Court of Appeal, are summarized in relevant part, as follows:

> Appellant, an American citizen, married Charlotte Jensen, a Danish citizen, in California in 1993. Their two daughters were born in San Francisco in 1994 and 1995. The family moved to New Zealand in December 1995. In March 1999 appellant came back to the United States, where he stayed until November 2000, when he returned to New Zealand. The couple separated on his return. A December 21, 2000 interim order of the New Zealand Family Court prevented the children's removal from New Zealand.

> In January 2001, the New Zealand court issued an interim custody order, whereby the girls lived with Jensen the majority of time. They stayed with appellant three weekends out of four, the Tuesday of the week they did not stay with him on the weekends, and half their school holidays. This visitation arrangement ended in May 2001 after appellant was deported from New Zealand for overstaying his three month visitor's permit. He moved to Louisiana, his home state. Jensen and the children were granted permanent resident status in New Zealand.

> On September 30, 2002, the New Zealand Family Court issued an order regarding appellant's "access" to the children in the United States (the access order). New Zealand's Guardianship Amendment Act of 1991 defines "rights of access" as the right to visit a child, including the right to take a child for a limited period of time to a place other than the child's habitual residence. The access order allowed appellant access to the children for three weeks in December 2002 in California, two weeks in July 2003 in New Zealand or California, the travel time to be included in the school holiday period with the intent they not miss any school, and one week in September 2003 in New Zealand. Concerning the children's travel to the United States, the access order required that Jensen accompany them, that appellant pay the travel costs for her and the children, that appellant pick up and return the children in Los Angeles, that while the children were with appellant they could telephone Jensen once a day and she could telephone them three

2

times a week, and that a copy of the access order authorizing appellant to exercise access in California be registered in the appropriate California court at appellant's expense.

By consent order, the December 2002 visit took place in New Zealand instead of California.

On June 13, 2003, appellant had the access order registered with the Santa Clara County Superior Court, pursuant to Family Code section 3445. The registration document states that "[t]his [attached September 30, 2002 access] Order, inter alia, grants custody of the minor children to [Jensen], with specified access to [appellant]." It certifies that the access order was made in conformity with the jurisdictional provisions of the Uniform Child Custody Jurisdiction and Enforcement Act (Fam. Code, §§ 3421, 3422, 3423). It requests that "the attached custody order" be made an order of the superior court, and it states that the parties waive any objection to registration of the order. Appellant and Jensen signed the registration document under penalty of perjury that the information therein was true. The superior court ordered the access order deemed registered and confirmed.

Jensen was reluctant to bring the children to California for the July 2003 visit because she feared appellant would not return them to her. He had not returned them on previous occasions, he objected to the children residing in New Zealand, and he had threatened that he would not return the children once they were out of New Zealand and that she would have to visit them in New Orleans, where, as she quoted appellant, " 'they belonged.'" Her fears were compounded by the fact that in the month prior to the July visit, appellant had made comments to the children about taking them to Louisiana, he had asked his travel agent about airfares to Louisiana, and he would not agree to any specific plans for his visit with the children. At her request appellant signed a letter on June 17, 2003, swearing that he would not take the children out of California without her written permission.

Before Jensen and the children left New Zealand for the July 2003 visit, she and appellant agreed that he would pick them up in San Francisco or Marin County rather than Los Angeles because they both had family or friend ties to the area that would make the exchange easier in these locales. Appellant and Jensen agreed that he would pick them up at a specified Tiburon parking lot on July 2 and return them at 1:00 p.m., July 18, at a specified Tiburon restaurant. Although the access order allowed appellant a two-week visit in July 2003, which included travel time, Jensen agreed to a 16-day visit to allow him more time with the children. Appellant knew the children and Jensen had nonrefundable, nonchangeable tickets to fly back to New Zealand on July 22.

3

On July 2, Jensen turned the children over to appellant at the specified Tiburon shopping center parking lot. During his visit to New Zealand the previous December, appellant had promised to take the children to Disneyland during their summer visit to the United States to celebrate the older child's July 12 birthday. However, on July 6 or 7 Jensen learned that appellant and the children would be going to Disneyland on July 7 instead, which she thought odd because it was not the child's actual birthday.

On July 7, the children telephoned Jensen from a car driven by appellant. They said they had only been at Disneyland for six or seven hours and were on "State Highway 5" on their way to New Orleans. When Jensen asked them where they were, they asked appellant, who told them to get off the telephone. Jensen was unable to make telephone contact with them for the next three days. She had a cell phone contact number for them, but all her calls went to an answer machine.

On July 10, the children telephoned her to say they were just inside the Louisiana border. She asked to speak to appellant, but he did not come to the phone. She spoke to them several times each day thereafter when they "sneak[ed] away into the bedroom" to call her.

Appellant refused to speak to her until the morning of July 18, when he told her he was keeping the children, they were not coming back at all, and he would "fight [her] all the way to the Supreme Court" if she took action to get them back.

Jensen went to the arranged pickup site in Tiburon at 1:00 p.m., July 18. Appellant did not appear with the children. During a July 21 recorded telephone call made from the Marin County District Attorney's office, appellant told Jensen it was unfair that the children were with her 95 percent of the time during the previous two years, and that it was in their best interest to spend substantial time with their father and for him to have joint custody. He also admitted that he had turned off his cell phone for the three days he and the children were traveling from California to Louisiana, and that he broke the promise he made in his June 18 letter not to leave California with the children.

On July 23, 2003, appellant was arrested in Louisiana and the children were recovered.

*People v. Olagues*, No. A112016, 2007 WL 1556662 (Cal. Ct. App. May 30, 2007), at *1-3 (footnotes omitted).

4

**STANDARD OF REVIEW**

This Court may entertain a petition for a Writ of Habeas Corpus "pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000).

Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 413. As summarized by the Ninth Circuit: "A state court's decision can involve an 'unreasonable application' of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000) (citing *Williams*, 529 U.S. at 405-07), *overruled in part on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003).

"[A] federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *accord Middleton v. McNeil*, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

In deciding whether the state court's decision is contrary to, or an unreasonable application of clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. *LaJoie v. Thompson,* 217 F.3d 663, 669 n.7 (9th Cir. 2000). If the state court, relying on state law, correctly identified the governing federal legal rules, the federal court must ask whether the state court applied them unreasonably to the facts. *Lockhart v. Terhune*, 250 F.3d 1223, 1232 (9th Cir. 2001).

A habeas petitioner is not entitled to relief unless the trial error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). The habeas petitioner must prove that the trial error resulted in "actual injury" to obtain relief. *Id.* The *Brecht* standard applies in all federal habeas corpus cases challenging criminal convictions under section 2254. *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007). The proper question in assessing harm in a habeas case is, "'Do I, the judge, think that the error substantially influenced the jury's decision?'" *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). If the court is convinced that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand. *Id.* at 437.

**DISCUSSION**

Petitioner alleges that the Vicinage Clause of the Sixth Amendment was violated because the jury that convicted him was composed solely of residents of Marin County, a county in which Petitioner alleges no part of the crime occurred. Petitioner's argument fails under the applicable standard of review.

**I.   Legal Standard**

The Vicinage Clause of the Sixth Amendment guarantees a person accused of a crime "the right to a . . . jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." U.S. Const. amend. XI. In *Stevenson v. Lewis*, the Ninth Circuit affirmed a district court's decision to deny habeas relief on Vicinage Clause grounds to a petitioner that alleged that he was tried in a county different from the county in which the crime occurred. The court reasoned that the United States Supreme Court has not decided whether the Vicinage Clause of the Sixth Amendment applies to the states through the Fourteenth Amendment. 384 F.3d 1069, 1071-72 (9th Cir. 2004). Accordingly, in *Stevenson*, the state court's decision could not have been "contrary to, or an unreasonable application of, clearly established federal law." *Id.*

**2.   Analysis**

The California Court of Appeal for the First Appellate District rejected Petitioner's related claims that he was tried in an improper venue and that his rights under the Sixth Amendment's Vicinage Clause were violated. In rejecting Petitioner's claim that he was tried in an improper venue, the state court first analyzed the claim under California law and denied the claim based on the California Supreme Court's holding in *People v. Betts*. 2007 WL 1556662 at *7 (citing 34 Cal. 4th 1039, 1057 (2005)). In *Betts*, a truck driver had committed sex offenses during the course of three trucking trips, thus committing the felony in several different counties and states. 34 Cal. 4th at 1044-45. The California

7

Supreme Court concluded that venue was proper in the trial county under California Penal Code section 781 which allows for jurisdiction in either county when "acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties." *Id.* at 1057. In *Betts*, the California Supreme Court held that section 781 should be liberally construed to achieve its underlying purpose of expanding venue beyond the county in which the crime was committed. *Id.* The court noted that proper venue was expanded under section 781 to include a county where preparatory acts, including telephone calls to the county, for the commitment offense occurred. *Id.* Facts establishing venue must be proved by a preponderance of the evidence rather than beyond a reasonable doubt. *Id.* (citing *People v. Posey*, 32 Cal. 4th 137, 219 (2004); *People v. Cavanaugh*, 43 Cal.2d 252, 262.)

Relying primarily on *Betts*, the state court found that venue in Marin County was proper under section 781 because Petitioner committed some aspects of the crime, including preparatory acts, there. 2007 WL 1556662 at *7. Specifically, the court found that Petitioner removed the children from Marin County with intent not to return the children. *Id.* Further, Petitioner actually failed to return the children to their lawful custodian in Marin County on the agreed date. *Id.* The state court found that these facts were proven by a preponderance of the evidence. *Id.*

In addition to concluding that Petitioner was tried in the proper venue under section 781, the state court also rejected Petitioner's argument that his Sixth Amendment Vicinage Clause right was violated. 2007 WL 1556662 at *8. In making his Vicinage Clause argument, Petitioner relied on the holding in *United States v. Johnson*, 323 U.S. 273, 275 (1944). *Id.* In *Johnson*, the Supreme Court discussed the importance of the Vicinage Clause stating, "[q]uestions of venue in

criminal cases . . . are not merely matters of formal legal procedure." *Johnson*, 323 U.S. at 275-76. Relying on *Price v. Superior Court*, the state court rejected Petitioner's argument and concluded that *Johnson* is not dispositive in this case because the Sixth Amendment has not been incorporated by the Fourteenth Amendment's due process clause for operation against the states. 2007 WL 1556662 at *8 (citing 25 Cal. 4th 1046, 1056 (2001)). As a result, the state court determined that Petitioner's Sixth Amendment vicinage right was not violated as that right does not apply to state proceedings. *Id.*

As the United States Supreme Court has not decided whether federal constitutional vicinage rights extend to the states, the California Court of Appeal's holding cannot be "contrary to, or an unreasonable application of, clearly established federal law," as those terms are used in 28 U.S.C. § 2254(d)(1). *Stevenson v. Lewis,* 384 F.3d at 1072. In *Stevenson v. Lewis*, the Ninth Circuit denied a habeas petition because there is no Supreme Court precedent that incorporates the Vicinage Clause for application to state court proceedings. *Id.* Petitioner's habeas claim fails on this ground.

Additionally, Petitioner fails to demonstrate that the state appellate court decision was an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," within the meaning of 28 U.S.C. § 2254(d)(2). In *Stevenson*, the Ninth Circuit determined that there was a "sufficient nexus" to try the petitioner in Orange County because he left his Orange County home with a gun, robbed a woman at gunpoint in Los Angeles County, returned to Orange County after the crime, and abandoned the victim's purse in Orange County. 384 F.3d at 1072. A similar nexus exists in Petitioner's case. Petitioner was arrested in Louisiana for the charged crimes, but Petitioner drove his two children to Louisiana after picking them up from Tiburon, California, within Marin

9

County. 2007 WL 1556662 at *1-3. Further, the state court found that Petitioner withheld the children "from their lawful custodian in the county in which the lawful custodian was to resume physical custody" by failing to return the kids to their mother on the date that Petitioner had agreed to do so in Marin County. *Id.* Unless the petitioner rebuts with clear and convincing evidence to the contrary, a determination of a factual issue made by a state court is presumed correct under 28 U.S.C. § 2254(e)(1). Because the Petitioner did not rebut the state court's facts with clear and convincing evidence, this court finds that the California Court of Appeal did not make an unreasonable determination of the facts in light of the evidence presented. Therefore, Petitioner's claim is DENIED.

## **CERTIFICATE OF APPEALABILITY**

The federal rules governing habeas cases have been amended to require a district court that denies a habeas petition to grant or deny a certificate of appealability in the ruling. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009). A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a certificate of appealability (formerly known as a certificate of probable cause to appeal). See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The certificate must indicate which issues satisfy this standard. *See id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000). For the reasons set out in the discussion of the

merits, above, jurists of reason would not find the result debatable. A certificate of appealability is DENIED.

## **CONCLUSION**

After a careful review of the record and pertinent law, the petition for writ of habeas corpus is denied. The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED: September 23, 2010

*Jeffrey S. White*
JEFFREY S. WHITE
United States District Judge

|   |   |   |
|---|---|---|
| | UNITED STATES DISTRICT COURT | |
| | FOR THE | |
| | NORTHERN DISTRICT OF CALIFORNIA | |

JOHN OLAGUES,

    Plaintiff,

v.

EDMUND G. BROWN, JR., et al,

    Defendant.

                                      /

Case Number: CV07-03918 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 23, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

John Olagues
413 Sauve Road
River Ridge, LA 70123

Dated: September 23, 2010

*Jennifer Ottolini*
Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk